## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**FREDDIE L. WILLIAMS,** *on behalf of himself*
*and all similarly situated individuals,*

**Plaintiff,**

**v.**

**Civil Action No.** 4:22-cv-92

**EXPERIAN INFORMATION SOLUTIONS, INC.,**

**Defendant.**

### COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, FREDDIE L. WILLIAMS, *on behalf of himself and all similarly situated individuals*, by Counsel, and files this Class Action Complaint against Defendant EXPERIAN INFORMATION SOLUTIONS INC. Plaintiff alleges as follows:

### PRELIMINARY STATEMENT

1.      This is a consumer class action brought for willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, and seeks actual, statutory, and punitive damages, costs, and attorneys' fees under the Act. *Id.* §§ 1681n, 1681o.

2.      Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

3.       Today in America there are three major consumer reporting agencies, Equifax, Experian and Trans Union, and hereafter referred to collectively as the "CRAs."

4.       The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

5.      The FCRA's accuracy provision demands that CRAs take actual steps to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Credit One Bank ("Credit One"), a subprime credit card issuer, particularly where a consumer makes a dispute about information reported.

6.      Also, when a consumer like Plaintiff disputes the accuracy of information through the CRAs, those disputes are transmitted to the party furnishing the information, here Credit One Bank and its affiliated debt collector, Resurgent Capital Services, LP ("Resurgent").

7.      The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify. The FCRA further requires CRAs to notify furnishers whenever their investigation of a consumer dispute results in correction or deletion of information provided by the furnisher.

8.      Plaintiff brings individual claims under Section 1681e(b) against Experian because Experian reported inaccurate information about Plaintiff regarding a Credit One account that did not belong to him.

9.      Resurgent also furnished derogatory, false information about the same account, now in collections with Resurgent, to Experian.

10.      When Plaintiff disputed the inaccuracies, Experian did not reasonably investigate as to the Credit One reporting, violating Section 1681i. Experian deleted the reporting furnished by Resurgent but failed to notify Resurgent of the deletion, again violating Section 1681i.

11.      Had Experian notified Resurgent of the deletion, it would have triggered a further obligation for Resurgent to investigate the account and Plaintiff's dispute.

12.    The Consumer Financial Protection Bureau (CFPB) has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Experian has complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian has been repeatedly sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what its customer-creditors instruct. Had Experian followed that advice and heeded those warnings, Plaintiff would not have been harmed.

13.    In the same report, the CFPB noted the following:

The FCRA also requires that, following a dispute investigation, the CR[A] must provide prompt notice of any modification or deletion to the furnisher. Examiners found that one or more CR[A]s failed in certain circumstances to provide this required notice. Supervision directed the CR[A](s) to develop processes to ensure that data furnisher notifications of deletions or modifications are provided to the furnisher in all instances required by the FCRA.

Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 11 (Issue 14, March 2, 2017).

14.    In this case, Resurgent and Credit One erroneously furnished inaccurate, derogatory information that was reported on Plaintiff's credit reports.

15.    Credit One issued a credit card with a $300 limit (reduced to $225 after assessment of the $75 annual fee) to a fraudster using Plaintiff's personal identifiable information.

16.    The fraudster maxed out the card and never made a payment.

17.    The credit card account bore "red flags" of identity theft specifically identified by federal regulators, including Credit One's chief regulator, the Office of the Comptroller of the Currency. *See* 12 C.F.R. Part 41, Identity Theft Red Flags and Address Discrepancies Under the Fair and Accurate Credit Transactions Act of 2003.

18.     For example, Plaintiff's credit history, reflecting credit cards with untapped credit limits totaling more than $20,000, rendered it exceedingly unlikely that he would open a subprime credit card with Credit One with an effective credit limit of $225, immediately max out the card, and never make a payment, destroying his good credit history.

19.     Credit One "charged off" the account, and its affiliate, Resurgent, initiated debt collection action against Plaintiff, including by reporting the account as a separate tradeline in Plaintiff's Experian credit file.

20.     In other words, there were two inaccurate, derogatory entries on Plaintiff's credit for the account—one by Resurgent, and one by Credit One.

21.     Plaintiff alleges individual claims under Section 1681e(b), which requires proof of two elements: (1) that a consumer report contained inaccurate information and (2) a credit reporting agency's failure to follow reasonable procedures to assure the maximum possible accuracy of the report. *See Souter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2011 WL 1226025, at *8 (E.D. Va. Mar. 30, 2011). This section imposes a high, and often disregarded, standard on consumer reporting agencies. *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

22.     Plaintiff alleges individual and class claims under Section 1681i. As to Credit One, Experian failed to substantively investigate Plaintiff's dispute, instead simply parroted Credit One's verification of its false, derogatory reporting. Accordingly, Plaintiff alleges an individual claim for violation Section 1681i for Experian's complete disregard of its reinvestigation duties as to Credit One's reporting.

23.     In response to Plaintiff's dispute, Experian deleted all reporting by Resurgent but ignored its duty under Section 1681i(a)(5)(A)(ii) to notify Resurgent of this deletion. Plaintiff

alleges a class claim under Section 1681i(a)(5)(A)(ii) because of Experian's widespread failure to notify furnishers of its correction or deletion of reporting by those furnishers in response to consumer disputes under the FCRA.

## JURISDICTION & VENUE

24.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

25.    Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and Division and a substantial part of the events giving rise to the Plaintiff's claims occurred in this District and Division.

## PARTIES

26.    Plaintiff Freddie L. Williams is a natural person residing in the State of Virginia, and at all times relevant to the Complaint was a "consumer" as defined by 15 U.S.C. § 1681a(c).

27.    Defendant Experian Information Solutions, Inc. is a foreign corporation, authorized to conduct business in the Commonwealth of Virginia through its registered agent.

28.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

29.    Third-party Credit One is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2.

30.    Third-party Resurgent is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Experian's Creditor-Customers

31.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. See S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *Id*. at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc*., 257 F.3d 409, 414-15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

32.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

33.     Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . .  before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

34.     Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

35.     It has long been the law that a CRA, such as Experian, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the disputed item. *See, e.g., Pinner v. Schmidt*, 805F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT- LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted*, No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

36.     That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

37.      As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); *see*

> Webster's Third New Int l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

38.     Further, as Experian is aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Experian has a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to Experian's duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id*. at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

39.     It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

40. Today, furnishers such as Credit One and Resurgent have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s-2. But while Experian's duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers were much more recently enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

### Section 1681i(a)(5)(A)(ii) Requires Experian to Notify Furnishers When It Corrects or Deletes Their Reporting Based on a Consumer Dispute

41. Section 1681i also requires Experian to notify its data furnishers when it corrects or deletes their reporting in response to a consumer dispute.

42. The National Consumer Law Center (NCLC), the organization that publishes the leading legal treatise in this field, noted the importance of this requirement:

> Such a notice should trigger a separate responsibility for the furnisher—to cease furnishing any information that the furnisher "knows or has reason to believe" is inaccurate—since the correction/deletion notice from the CRA should serve as reason to believe that the information was inaccurate. Furthermore, it should trigger the furnisher's duty to notify all CRAs to which it has furnished the same information of the correction.

National Consumer Law Center, FAIR CREDIT REPORTING, Ch. 4.6.3 (10th ed. 2022), *updated at* www.nclc.org/library.

43. Experian possesses the means to automate the notification process for furnishers mandated by Section 1681i(a)(5)(A)(ii) but inexplicably failed to do so, harming Plaintiff and innumerable other consumers.

### Plaintiff Discovers the CRAs Were Reporting the Fraudulent Credit One Account on Plaintiff's Credit Reports

44. In or around August 2020, Plaintiff obtained a copy of his credit report from each of the three credit reporting agencies, Equifax, Experian and Trans Union. Upon receipt, Plaintiff

discovered that Experian, Equifax and Trans Union were each reporting a derogatory Credit One account that did not belong to him.

45.     The Credit One account had been opened in December 2017 and sold to Credit One's affiliate, LVNV Funding, in or around August 2018.

46.     Although Experian identified LVNV as one of the furnishers of reporting regarding the Credit One account, Resurgent, not LVNV, reports all information pertaining to LVNV-owned debts to the CRAs, including Experian.

47.     Plaintiff never opened the Credit One account, nor has he ever used or had in his possession a Credit One credit card.

48.     The account was opened under the name of "Freddie Williams" and was associated with the address: 317 Settlers Landing Road, Hampton, Virginia.

### *Plaintiff Disputes the Inaccuracies with Experian and Equifax*

49.     Plaintiff filed a police report on or about August 17, 2020 and later disputed the account with Experian through a telephone call.

50.     On or about September 22, 2020 Experian forwarded Plaintiff its dispute results and advised that it had deleted the reporting by LVNV of the Credit One account. Inexplicably, the same results advised Plaintiff that the Credit One account had been verified as accurately reporting derogatorily as a $606 charged off account.

### *Experian Did Not and Does Not*
### *Conduct Any Investigation of Most Consumer Disputes*

39.     Unknown to the Plaintiff until this lawsuit, it has long been the practice of Experian to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action

in response to consumer disputes to a third-party outsource vendors located overseas. Experian uses an outsourced company, Experian Chile (or Experian Costa Rica) to process its mail disputes.[2]

40.     Experian Chile (or Experian Costa Rica) uses low-wage employees to work quickly to process consumer dispute letters received, skimming the letters and selecting one or a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits.

41.     These dispute agents are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

42.     The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

43.     In fact, Experian strongly encourages consumers to make disputes through its online website. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect"). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands

---

[2] Defendant Experian outsources its dispute procedures to an affiliated company, Experian Services Chile, S.A, in Santiago, Chile. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). Such was confirmed in a recent case in this District with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the same theory—no investigation was conducted by the CRA.

or being read by human eyes at Experian. It gets sent to Defendant's creditor customer (such as Credit One) for its sole review and consideration.

44.    Regardless of whether these statements are correct, Experian believes that it cannot direct, control, manage or reliably influence the employees of their respective third-party outsource vendor.

45.    Experian itself did not conduct any reinvestigation of Plaintiff's disputes. Instead, it merely caused it to be removed from its control to be saved within a database by an overseas data-processing vendor.

### Experian and Equifax Forwarded Plaintiff's Disputes to Credit One and Resurgent, Who Did Nothing

46.    In each instance in which Plaintiff disputed the Credit One account with Experian, it forwarded Plaintiff's disputes to Credit One using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Experian. Experian also forwarded Plaintiff's dispute to Resurgent.

47.    e-Oscar is also the system by which Credit One and Resurgent have agreed it will accept such consumer disputes from the CRAs.

48.    Under such circumstances, Credit One and Resurgent became obligated under the FCRA to investigate Plaintiff's disputes.

49.    Credit One and Resurgent failed to reinvestigate Plaintiff's complaints.

50.    The information furnished by Credit One and Resurgent to Experian was at all times inaccurate.

### Plaintiff Suffered Actual Harm

51.    Experian continued to report the derogatory Credit One account for a period of time on Plaintiff's credit reports, despite being notified that this information was false.

52.     Experian failed to notify Resurgent of its deletion of Resurgent's reporting regarding Plaintiff, which would have given Resurgent "reasonable cause to believe" its reporting was "inaccurate," if not actual notice of the inaccuracy of its false reporting. 15 U.S.C. § 1681s-2(a)(1)(A)

53.     Plaintiff's credit was significantly destroyed by Defendant's failure to delete the inaccurate reporting by Credit One and notify Resurgent of the inaccuracy of its reporting as to Plaintiff.

54.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

  a.     Monies lost by attempting to fix his credit, e.g., communication costs, postage for disputes;

  b.     Loss of time attempting to cure the error;

  c.     Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

  d.     Stress associated with attempting to resolve this matter in the last couple of years.

***Experian's Conduct Was Willful***

55.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

56. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

57. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. Experian and Equifax's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

58. Experian has received many thousands of disputes and other complaints regarding the creditors at issue in this case-sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

59. Just in federal court alone, during the last decade the creditor-furnisher disputed by Plaintiff has had to defend over 700 consumer lawsuits.

60. In many or even most of these FCRA lawsuits brought by a consumer, Experian was a named co-defendant.

61. Experian knew or should have known of this litigation history. Experian uses and has access to PACER to investigate and monitor such consumer complaints.

62. The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

63. Each Defendant regularly receives unredacted consumer dispute details from this database.

64.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

65.     Further, over 33,000 of the CFPB complaints as to Experian were based largely on their failure to reasonably investigate consumer disputes.

66.     Further, consumers have submitted over 3,000 complaints about Credit One to the CFPB regarding its credit reporting.

67.     Just in the last 12 months alone, Experian has been sued by consumers alleging violations of the FCRA over 2,000 times. Most of these alleged that the Experian violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

68.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Experian on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed Experian on notice that it may not merely "parrot" what its creditor-customer tells them if the consumer had provided a substantive and detailed dispute.

69.     Experian has had had actual notice from numerous other courts that its blind ACDV "parroting" was unlawful. *See, e.g., Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"); *Schweitzer v. Equifax Info. Sols. LLC,* 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols. LLC,* 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information.");

70.     Experian has long had specific notice from courts about its expected conduct in dispute investigations. The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a Trans Union case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

71.     Experian has also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

72.     In 2015, a large group of state Attorneys General forced a consent order from Experian by which it was required to develop procedures necessary to comply with the FCRA. The AG Settlement required amongst many changes and mandates that Experian comply with § 1681i(a).[3]

73.     The AG Settlement also required Experian to conduct significant research and data gathering-even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, Experian did not meaningfully comply with the AG Settlement in these regards.

74.     Experian is also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the NCLC also published a scathing research paper detailing the actual process followed by the CRAs when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX Ten Years after

---

[3]     *Available      at      https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors, National

Consumer Law Center, February 2019. ("NCLC Report").[4]

75.     The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated
Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix
Errors in their Credit Reports, the landmark report on the serious dysfunctions in
the American credit reporting system. Since then, the Consumer Financial
Protection Bureau (CFPB) began exercising supervision authority over the Big
Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult
task of compelling them to reform their procedures and practices. A coalition of
more than 30 state Attorneys General reached a breakthrough settlement with the
credit bureaus in 2015, requiring an array of reforms. Despite these very laudable
achievements, the credit bureaus and the companies that supply them with
information still have serious problems in ensuring the accuracy of credit reports,
affecting millions of American consumers. The dispute process required by the Fair
Credit Reporting Act (FCRA) that was intended to fix these problems remains
ineffective and biased.

76.     Among many of Experian's accuracy failures, the NCLC Report discovered:

- Insufficient Information Conveyed and Considered in Investigation.
  Credit bureaus use the highly automated e-OSCAR system to convey
  disputes to furnishers, primarily using shorthand two- or three-digit
  codes, and at most only a line or two of text in a minority of instances.
  The credit bureaus use the same four or five codes over 80% of the time.

- Failure to Transmit Information Submitted by the Consumer. Credit
  bureaus failed to send supporting documentation submitted by
  consumers to furnishers, in clear violation of the FCRA.

- Perfunctory Credit Bureau Investigations. Credit bureaus limit the role
  of their employees who handle disputes, or of the foreign workers
  employed by their offshore vendors, to little more than selecting these
  two- or three-digit codes. Workers do not examine documents, contact
  consumers by phone or email, or exercise any form of human discretion
  in resolving a dispute.

- Credit Bureaus Always Side with Furnishers. Credit bureaus are
  universally biased in favor of furnishers and against consumers in
  disputes. In a practice known as "parroting," credit bureaus blindly

---

[4] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

> adopted the response of the furnisher without performing any
> independent review.

NCLC Report at 6.

77.     Despite the notice and judicial, regulatory and public interest criticism, Experian has refused to change its dispute investigation process because it would cost too much money to do so.

78.     Experian is also aware, through the plain language of Section 1681i(a)(5)(A)(ii), that it must notify its furnisher-customers when it modifies or deletes their reporting in response to a consumer dispute. The CFPB noted deficiencies in CRA compliance with Section 1681i(a)(5)(A)(ii), more than five years ago. Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 11 (Issue 14, March 2, 2017). Experian's failure to bring its electronic dispute processes into compliance with the express language of Section 1681i(a)(5)(A)(ii) evinces recklessness to its statutorily mandated obligations.

79.     Experian's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLASS ACTION ALLEGATIONS

80.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

81.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings Count I for herself and on behalf of a class initially defined as follows:

> **1681i(a)(5)(A)(ii) Class:** All persons residing in the United States who disputed credit reporting information from a furnisher where Experian deleted or suppressed the furnisher's reporting but failed to notify the furnisher of the deletion or suppression within five years prior to the filing of this action and during its pendency.

18

82. Class certification is appropriate under Rule 23(a).

83. **Numerosity:** The class members are so numerous that joinder of all their claims is impractical. The class members are geographically distributed across the United States, their names and addresses are identifiable through Experian's internal business records, and they may be notified of the pendency of this action by published and/or mailed notice. Given the volume of Experian's dispute processing operation, there are thousands, if not hundreds of thousands, of class members.

84. **Typicality:** Plaintiff's claims are typical of the members of the classes. It is typical for Experian to fail to notify furnishers when it deletes or suppresses their reporting in response to a consumer dispute, and Experian treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

85. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the classes because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the class.

86. **Commonality:** This case presents common questions of law and fact, including but not limited to:

    a. Whether Experian violated the FCRA by failing to notify furnishers when it deleted or suppressed their reporting in response to a consumer dispute;

    b. Whether Experian's violations of the FCRA were willful; and

    c. The proper measure of damages.

87. **Superiority:** Class certification is appropriate under Rule 23(b)(3) because, *inter alia*, questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods

for the fair and efficient adjudication of this litigation. Experian's conduct described in this Complaint stems from common and uniform policies and practices. Members of the class do not have an interest in pursuing separate actions against Experian, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Experian's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

88.     In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

89.     Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of § 1681i(a)(5)(A)(ii) of the FCRA – against Experian
### (Class Claim)

90.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

91. Defendant Experian willfully violated 15 U.S.C. § 1681i(a)(5)(A)(ii) by systematically failing to notify its furnisher-customers when it deletes or suppresses their reporting in response to a consumer dispute.

92. Discovery will show that Experian followed a standard and systematically unlawful process where it failed to establish any means to notify its furnisher customers of its deletion or suppression of their reporting in response to a consumer dispute.

93. As a result of this conduct, action and inaction of Experian, Plaintiff and the 1681i(a)(5)(A)(ii) Class suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

94. Plaintiff and each putative class member suffered real and actual harm and injury.

95. For example, the rights at issue were determined by Congress to be important measures of Experian's process to ensure continued accuracy and completeness in its files and reports.

96. In each instance, Experian determined that it was appropriate to delete or suppress information from a furnisher because "an item of the information [was] found to be inaccurate or incomplete or cannot be verified," but then failed to apprise its creditor-customers of this determination. 15 U.S.C. § 1681i(a)(5)(A)(ii).

97. Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the violations were negligent, rendering Experian liable under 15 U.S.C. § 1681o.

98.     As a result of these FCRA violations, Experian is liable for statutory damages from $100 to $1,000 for Plaintiff and each class member, punitive damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

## COUNT II
### Violation of § 1681e(b) of the FCRA – against Experian
### (Individual Claim)

99.     Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

100.    Defendant Experian willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintained concerning the Plaintiff.

101.    As a result of this conduct, action and inaction of Experian, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

102.    Further, after the Plaintiff's disputes put Experian on notice of likely inaccuracies and reasons to doubt the correctness of reporting furnished to it by Credit One, Experian ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit reports.

103.    Experian furnished multiple consumer reports to third parties containing the inaccurate tradeline information and it did so after receiving notice of these inaccuracies.

104.    Experian's conduct, action and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

105.    As a result of Experian's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

106.    Plaintiff is entitled to recover his costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### Violation of § 1681i of the FCRA – against Experian
### (Individual Claim)

107.    Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

108.    Experian willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information furnished by Credit One in the Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to Credit One; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

109.    Further, Experian violated Section 1681i by conducting no investigation at all. Section 1681i demands that when Plaintiff notified Experian directly of his disputes regarding Credit One's reporting, that party—the consumer reporting agency who received the disputes— must investigate those disputes. The statute does not contemplate someone other than Experian conducting the investigation.

110.    Yet, Experian used an unrelated third-party, Experian Chile, over which Experian has no direct control, to conduct its investigations. Experian Chile is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Experian therefore violated 1681i

on this basis because it sent Plaintiff's disputes away to a company that was not its controlled agent rather than investigating them as required.

111.    As a result of Experian's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

112.    Experian's conduct, action, and inaction was willful, rendering Experian liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

113.    Plaintiff is entitled to recover his costs and attorneys' fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff prays for relief as follows:

A.    Determining that this action may proceed as a class action under Rule 23;

B.    Designating Plaintiff as the class representative for the class;

C.    Designating Plaintiff's counsel as counsel for the class;

D.    Issuing proper notice to the class at Experian's expense;

E.    Determining that Experian negligently and/or willfully violated the FCRA;

F.    Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

G.    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

H.    Granting further relief as this Court may deem appropriate and just.

TRIAL BY JURY IS DEMANDED

Respectfully submitted,

**FREDDIE L. WILLIAMS**

By: _____/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA 23601
(757) 930-3660 - Telephone
(757) 930-3662 - Facsimile
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Drew Sarrett, VSB #81658
**CONSUMER LITIGATION ASSOCIATES, P.C.**
626 East Broad Street, Suite 300
Richmond, VA  23219
(804) 905-9900 - Telephone
(757) 930-3662 - Facsimile
Email:  drew@clalegal.com

*Counsel for Plaintiff*